STEFANIE GENTLES, ET AL.,

                Plaintiffs,

v.                                     Case No.: 3:15-cv-00069-DRH-DGW

HEALTHPORT TECHNOLOGIES, LLC
AND CIOX HEALTH, LLC

                Defendants.

## CLASS ACTION SETTLEMENT AGREEMENT

This AGREEMENT is entered into by and among (i) Plaintiffs Stefanie Gentles, Richard Messerly, Gregg Brown, and David Bair ("Plaintiff(s)" or "Class Representative(s)"); (ii) the "Settlement Class," and (iii) Defendants HealthPort Technologies LLC ("HealthPort") and CIOX Health LLC ("CIOX") (together "Defendants"), by and through their respective counsel of record in this Action. All the parties to this Class Action Settlement Agreement ("Settlement Agreement") shall collectively be referred to as the "Parties" or the "Settling Parties." This Settlement Agreement is intended by the Parties to fully, finally, and forever resolve, discharge, and settle the Released Claims (as the term is defined below), upon and subject to the terms and conditions hereof, and subject to the approval of the Court.

Any class certification agreed to herein is for settlement purposes only and Defendants in no way agree or consent to the appropriateness of such a certification were the claims to be contested in litigation.

### RECITALS

A.      On December 5, 2014, then Plaintiff Stephen Schaefer brought a putative class action against HealthPort in the Circuit Court of St. Clair County, Illinois, which was assigned

Case No. 14-L-779 (the "Action"), alleging that Defendant HealthPort violated 735 ILCS 8-2001(d) which sets for the maximum charges for medical record copy fees, for charging a $2.00 electronic delivery fee allegedly not authorized by the statute and for failing to apply a 50% discount to the cost of providing electronic medical records it provided to requestors. Plaintiff's Complaint included Counts for a violation of the Illinois Consumer Fraud Act, 815 ILCS 505/2, and a claim for Unjust Enrichment (the "Claims").

B.     On January 22, 2015, Defendant timely removed the Action to this Court.

C.     After the Action was removed, Plaintiffs Gentles, Messerly, Brown, and Blair were added to the case in an Amended Complaint and Stephen Schaefer dismissed his claims. The Amended Complaint continued to assert claims against HealthPort for charging a $2.00 electronic delivery fee Plaintiffs asserted not to be authorized by the statute and for failing to apply a 50% discount to the cost of providing electronic medical records.

D.     On February __, 2017, the Plaintiffs filed an Amended Complaint that added as an additional defendant CIOX Health, LLC.

E.     Defendants contend that they have acted in accordance with the law and therefore denied and continue to deny that they committed any wrongdoing whatsoever and further deny that they committed, threatened or attempted to commit any of the wrongful acts or violations of law or duty that are alleged in the Action.

F.     Notwithstanding each Party's confidence in its position on the merits, the Parties and their counsel recognize and acknowledge the expense and length of continued litigation of the Claims against Defendants through trial and through any subsequent appeals. Based upon their evaluation and the evaluation of their counsel, the Class Representatives have concluded that the terms and conditions of this Settlement Agreement are fair, reasonable, and adequate to

the Settlement Class, and that it is in the best interests of the Settlement Class to settle the Claims raised in the Action pursuant to the terms and provisions of this Settlement Agreement.

G.     This Settlement Agreement, and all related documents, shall not be construed as or deemed to be evidence of or an admission or concession on the part of the Class Representative or Defendants as to the strength of any Claims or defenses.

H.     Through the discovery process, there has been an exchange of confidential business and sales information.  Based on this exchange, the Parties concur that, given the particular circumstances of this case and the limited amount of fees at issue, injunctive relief, rather than monetary relief, in the form outlined in this Settlement Agreement is fair, adequate and reasonable. While this Settlement Agreement does not release any claims for monetary relief on behalf of the Settlement Class, the Class Representatives, through Class Counsel, have reviewed confidential information, performed their own analysis, and determined that injunctive relief is the most appropriate remedy for the resolution of the Settlement Class's claims in this case.

I.     The Claims are being released in total and with prejudice by the Class Representative against the Released Parties and no other Party.  No Claim except for injunctive or declaratory relief as set forth herein is being released by the Settlement Class. (See Definitions, "Released Claims"). The Released Claims were resolved in good faith following arms' length bargaining.  The Settlement reflected herein confers substantial benefits upon the Settling Parties, and achieves a result that is fair, reasonable, and adequate.

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among the Class Representatives, the Settlement Class, and each of them, and Defendants, by and through their respective undersigned counsel that, subject to approval of the Court pursuant to Federal

Rule of Civil Procedure 23(e) in consideration of the benefits flowing to the Settling Parties from the Settlement set forth herein, the Released Claims shall be finally and fully compromised, settled, and released, and the Released Claims shall be dismissed with prejudice upon and subject to the terms and conditions of this Settlement Agreement, including the following:

## 1. DEFINITIONS

As used in this Settlement Agreement, the following terms have the meanings specified below:

1.1. "Action" means the case captioned *Gentles v. Healthport Technologies, LLC*, 3:15-cv-00069-DRH-DGW.

1.2. "Class Counsel" means the following individuals and their law firms: David Nelson of Nelson and Nelson P.C. and Matthew H. Armstrong of Armstrong Law Firm LLC.

1.3. "Class Period" means the period of time from December 6, 2010 through the date of the Court's final approval of the Settlement, inclusive.

1.4. "Class Representatives" mean Plaintiffs Stefanie Gentles, Richard Misserly, Gregg Brown, and David Bair.

1.5. "Court" means the District Court for the Southern District of Illinois.

1.6. "Defendant's Counsel" means Robert Thompson of Bryan Cave LLP.

1.7. "Effective Date of Settlement" or "Effective Date" means the first date by which both the events and conditions specified in Section 8.1 have been met and have occurred.

1.8. "Electronic Medical Records" shall refer to records maintained by a health care facility or practitioner in electronic form.

1.9. "Paper Copy Price" refers to the price set by the Examination of Health Care Records Act, 735 ILCS 5/8-2001 ("EHCRA"), for paper copies of medical records

1.10. "Electronic Record Price" refers to the price set by the EHCRA for Electronic Medical Records.

1.11. "Electronic Delivery Fee" refers to the $2.00 fee charged by HealthPort and/or CIOX to transmit records via the HealthPort*Connect* electronic portal.

1.12. "Settlement Class" means all persons in the United States who paid to HealthPort Technologies, LLC and/or CIOX Health, LLC at any time on or after December 6, 2010 one of the following fees as a result of obtaining electronic medical records in electronic form from a healthcare facility or physician practice located in the State of Illinois:

(a)     the full Paper Copy Price rather than the discounted Electronic Record Price; and/or

(b)     an Electronic Delivery Fee.

1.13. "Final" or "Final Settlement Date" means one business day following the latest of the following events:

a.     the date upon which the time expires for filing or noticing any appeal of the Court's Final Judgment and Order of Dismissal With Prejudice approving the Settlement in all material respects in the form of Exhibit A hereto; or

b.     if there is an appeal or appeals, other than an appeal or appeals solely with respect to attorneys' fees, the date that the clerk of the court receives the appellate court's mandate affirming that the Court's Final Judgment and Order of Dismissal has been affirmed in all respects or affirmed in all respects other than with respect to attorneys' fees; or

c.     the date of final dismissal of any appeal or the final dismissal of any proceeding on certiorari.

1.14.   "Final Approval Hearing" and "Approval Hearing" are interchangeable and mean the hearing, if any, at which the Court shall:

a.   determine whether to grant approval to this Settlement Agreement and to certify the Settlement Class; and

b.   rule on the applications for fees as described in Section 7 of this Settlement Agreement.

1.15.   "Final Judgment and Order of Dismissal With Prejudice" means the proposed final judgment and order to be entered by the Court approving the Settlement, in all material respects, in the form of Exhibit A hereto. Any change to the proposed Final Judgment and Order of Dismissal With Prejudice that has the effect of directly or indirectly requiring Notice, or which has any economic consequences of any kind to either of the Parties, regardless of magnitude or dollar impact, shall be deemed to be a material change.

1.16.   "Notice" carries the same meaning as the term does in Rule 23 of the Federal Rules of Civil Procedure.

1.17.   "Parties" or "Settling Parties" means the Class Representatives, the Settlement Class, and Defendants.

1.18.   "Person" means an individual, corporation, partnership, limited partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government, or any political subdivision or agency thereof, and any business or legal entity and their spouses, heirs, predecessors, successors, representatives, officers, directors, employees, agents, insurers, attorneys, or assigns.

1.19.   "Plaintiff(s)" mean Class Representatives Stefanie Gentles, Richard Misserly, Gregg Brown, and/or David Bair.

1.20.    "Released Claims" means any and all claims for injunctive or declaratory relief asserted in any complaints filed in this matter or any claim for injunctive or declaratory relief on the basis of, in connection with, arising out of, or which relate in any way to the subject matter of the complaints, as well as any and all claims, demands, obligations, causes of action, costs, expenses, attorneys' fees, or indemnities of any nature whatsoever associated with any claim for injunctive or declaratory relief, whether based on contract, tort, statute, or any other legal or equitable theory of recovery or relief, whether known or unknown, whether arising from state, federal, or local law, that all members of the Settlement Class now have, may have in the future, or claim to have against the Released Parties, arising out of or in any way connected to the marketing or labeling of the Product(s) and/or on the basis of, in connection with, arising out of, or relating to the Action. The parties do not intend this Settlement Agreement to release or otherwise affect in any way the rights a Class Member has or may have against any other party or entity other than the Released Parties with respect to the Released Claims.

Notwithstanding any contrary provision in this Agreement, the definition of "Released Claims" will, for the Plaintiffs individually named in the action, release not only all of the injunctive and declaratory claims referenced in this Section 1.20, but also any and all claims for monetary relief, losses, compensatory relief, punitive damages, special damages, treble damages, damages based on a multiplier, exemplary damages, indirect damages, direct damages, lost profits, lost revenue, lost business opportunities, damage to equipment, fees, costs, expenses, statutory damages, breach of warranty of any kind, and, in fact, any and all claims for damages or any claim for which the relief could result in payment of any amount of money for any reason.

1.21.    "Related Entities" means, for any Person:  its past, present and future parents, including, but not limited to, any intermediary and/or ultimate parents; agents; administrators;

suppliers; distributors; reorganized successors; spin-offs; assigns; holding companies; related companies; joint-ventures; partners; members; directors; shareholders; officers; owners; employees; subsidiaries; affiliates; insurers; attorneys; divisions; predecessors; successors; assigns; authorized retailers; and wholesalers.

1.22. "Released Parties" means HealthPort and CIOX and the Related Entities of same, whether specifically named and whether or not participating in the Settlement by payment or otherwise.

1.23. "Settlement" or "Settlement Agreement" means the settlement contemplated by this Settlement Agreement.

1.24. "Settlement Class Member" or "Class Member" means a Person who falls within the definition of the Settlement Class.

## 2. INJUNCTIVE TERMS.

2.1 As of the Effective Date of this Settlement, HealthPort and CIOX will disclose to all persons requesting Electronic Medical Records at or around the time of the request the $2.00 fee for receiving records via the HealthPort*Connect* electronic delivery portal.

2.2 As of the Effective Date of the Settlement, HealthPort and CIOX will apply a 50% discount to the Paper Copy Price for Electronic Medical Records delivered electronically, as provided in 735 ILCS 5/8-2001.

2.3 The terms of the injunctive relief set forth herein shall not operate to preclude and/or deprive Defendants of the benefit of changes in applicable statutes, regulations, and binding standards.

2.4 Prior to any action to enforce the obligations under Article 2 of this Agreement, including but not limited to seeking any contempt or injunctive relief regardless of whether

such relief is considered to be an emergency, Defendants must be provided with written notice of the alleged breach and a reasonable opportunity, and in no case less than 60 business days, to cure the alleged breach ("Cure Period"). Provided that Defendants cure the alleged breach within the Cure Period or otherwise provide reasonable confirmation that (i) it is not possible to cure the alleged breach within the Cure Period, and (ii) Defendants have commenced, and as of the end of the Cure Period is continuing to make, good-faith efforts to cure the alleged breach, the Party alleging the breach shall not take action to enforce any rights under this Agreement.

3.    **SETTLEMENT CONSIDERATION**

3.1.    Under the Settlement, the Settlement Class obtains the benefit of the injunctive relief outlined in detail under Section 2 in exchange for the Release granted to Released Parties.

3.2.    Under the Settlement, the Released Parties obtain the benefit of the Release in exchange for the agreed upon injunctive relief.

4.    **RELEASES**

4.1.    On the Effective Date of the Settlement, the obligations incurred pursuant to this Settlement Agreement shall be a full and final disposition of the Action and any and all Released Claims against all Released Parties. On the Effective Date of the Settlement, the Parties and each and every Settlement Class Member shall be bound by this Settlement Agreement. No other action, demand, suit, or other claim for injunctive or declaratory relief may be pursued against the Released Parties with respect to the Released Claims. This Settlement Agreement, except as noted in Section 1.20, does not release claims for individual pecuniary losses or actual monetary damages, if any, for Class Members who are not Class Representatives.

4.2.    On the Effective Date of the Settlement, all Class Members by operation of the Final Judgment and Order of Dismissal With Prejudice shall be deemed to have and shall have

fully, finally, and forever released, relinquished, and discharged all Released Claims against the Released Parties.

4.3.    Plaintiffs expressly understand and acknowledge, and all Settlement Class Members will be deemed by the Final Judgment and Order of Dismissal With Prejudice to acknowledge, that certain principles of law, including, but not limited to, Section 1542 of the Civil Code of the State of California, provide that "[a] general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."   To the extent that anyone might argue that these principles of law are applicable – notwithstanding that the Parties have chosen Illinois law to govern this Agreement – Plaintiffs hereby agree that the provisions of all such principles of law or similar federal or state laws, rights, rules, or legal principles, to the extent they are found to be applicable herein, are hereby knowingly and voluntarily waived, relinquished and released by Plaintiffs and all Settlement Class Members. This Section 4.3 only applies to claims for injunctive or declaratory relief and does not waive, impact, or pertain to claims for monetary relief that may be made, if any.

4.4.    Plaintiffs and all Settlement Class Members expressly agree that this Release will be and may be raised as a complete defense to and will preclude and bar any action or proceeding encompassed by this Release.

4.5.    Plaintiffs and Defendants hereby agree and acknowledge that the provisions of this Release together constitute an essential and material term of the Agreement and shall be included in the Final Judgment and Order of Dismissal With Prejudice entered by the Court.

**5.     TERMINATION OF SETTLEMENT**

5.1.    Any Party shall have the right to terminate the Settlement and this Settlement Agreement by providing written notice of its election to do so ("Termination Notice") to the other Party hereto within thirty (30) days of:

    a.    the Court's refusal to approve this Settlement Agreement or any material part of it;

    b.    the Court's refusal to enter the Final Judgment and Order of Dismissal With Prejudice in any material respect (other than as to attorneys' fees);

    c.    the date upon which the Final Judgment and Order of Dismissal With Prejudice is modified or reversed in any material respect (other than as to attorneys' fees) on appeal; or

    d.    the date upon which an Alternative Judgment (defined in Section 8.1(b) below) is modified or reversed in any material respect (other than as to attorneys' fees) on appeal.

**6.     COURT APPROVAL**

6.1.    Promptly after the execution of this Settlement Agreement, the Parties shall jointly notify the Court that a proposed class settlement has been reached and submit a request for a hearing on the same.

6.2.    At or prior to the hearing, the Parties will submit this Settlement Agreement, and its Exhibit, to the Court and shall jointly request entry of the Final Judgment and Order of Dismissal With Prejudice in the form of Exhibit A hereto ("Motion for Approval").

6.3.    The Parties' joint submission described in Section 6.2 shall request that the Court:

    a.    determine whether to grant final approval to this Settlement Agreement and to certify the Settlement Class; and

b. rule on the fee application as described in Section 7.

6.4. At the Approval Hearing, the Parties shall ask the Court to give final approval to this Settlement Agreement. If the Court grants final approval to this Settlement Agreement, then the Parties shall ask the Court to enter an order approving the Settlement Agreement, substantially in the form of Exhibit A attached hereto, that approves this Settlement, certifies the Settlement Class, authorizes entry of a final judgment, and dismisses the Action with prejudice ("Final Approval Order").

## 7. CLASS COUNSEL'S ATTORNEYS' FEES and INCENTIVE AWARDS

7.1. By the process described below, Class Counsel shall be paid fees up to, but no more than, the amount described in Section 7.2 herein, subject only to Court approval, for their efforts and work as counsel for Class Representatives. Class Counsel shall not seek, and will not accept, a fee award in any greater amount.

7.2. Class Counsel agree that they will apply for an award of no more than Two Hundred Ninety Thousand Dollars ($290,000) in attorneys' fees. Defendants will not object to the same. The amount of fees described in this Section 7.2 is inclusive of all costs, including but not limited to expert fees, and Class Counsel agrees that they will neither seek nor accept more fees than the amount described in this Section 7.2.

7.3. The Parties agree that any issues submitted to the Court regarding the amount of attorneys' fees will be considered by the Court separately from the remaining matters to be considered at the Final Approval Hearing as provided in this Settlement Agreement. Any order or proceedings relating to the amount of attorneys' fees including any appeals from or modifications or reversals of any order related thereto, shall not operate to modify, reverse, terminate, or cancel the Settlement Agreement, affect the releases provided for in the Settlement Agreement, or affect whether the Final Approval Order becomes Final as defined herein. In the event that the Court

awards Class Counsel less than the amount specified in Section 7.2, and Class Counsel elects to appeal that decision, Defendants shall have no obligation to pay more than the amount originally awarded by the Court unless and until that appeal has been resolved in Class Counsel's favor and a revised award has been entered. In no event, regardless of the result of any appeal, will Defendants be required to pay any total amount to Class Counsel greater than that specified in Section 7.2.

7.4. If the Court approves the award of attorneys' fees as described, such an award shall be effectuated by means of entry of a judgment for such an amount, payable to Class Counsel as approved attorneys' fees.

7.5. Defendants shall cause to be paid by wire transfer to Armstrong Law Firm LLC, on behalf of Class Counsel, monies sufficient to satisfy any unsatisfied portion of the judgment referenced in this Section 7 within five business days of the Court's final approval and dismissal order. Class Counsel shall provide wiring instructions and an executed W-9 Form prior to the payment of approved attorneys' fees.

7.6. In addition, Defendants shall cause to be paid $5,000.00 to each Class Representative ($20,000 Total). Such payment will be made by wire transfer to Armstrong Law Firm LLC or by a check to the Class Representative sent to Class Counsel. Each Class Representative shall provide an executed W-9 Form prior to the payment of approved Class Representative fee payment.

7.7. Nothing in this section shall be construed in any way to reduce the benefits to be provided to the Settlement Class.

**8. CONDITIONS OF SETTLEMENT, EFFECT OF DISAPPROVAL, CANCELL-ATION, OR TERMINATION**

8.1.    The Effective Date of the Settlement shall not occur unless and until each and every one of the following events occurs and shall be the date upon which the last (in time) of the following events occurs:

   a.    The Court has approved the Settlement, as provided in Rule 23(e) of the Federal Rules of Civil Procedure, and has entered the Final Judgment and Order of Dismissal With Prejudice, or a judgment in the form of Exhibit A without material change; and

   b.    The Final Judgment and Order of Dismissal With Prejudice has become Final, as defined in Section 1.13 and 1.15, above, or, in the event that the Court enters an order and final judgment in a form other than that provided above ("Alternative Judgment") and has the consent of Defendants and the Class Representatives, such Alternative Judgment becomes Final.

8.2.    Any change to the proposed Final Judgment and Order of Dismissal With Prejudice that has the effect of directly or indirectly requiring Notice, or which requires payment to Class Counsel of any costs (including but not limited to expert fees) or attorneys' fees in excess of the total amount of attorneys' fees described in Section 7.2, and/or any change to the proposed Final Judgment and Order of Dismissal With Prejudice that has any economic consequences of any kind to either of the Parties, regardless of magnitude or dollar impact, shall be deemed to be a material change.

8.3.    If this Settlement Agreement is not approved by the Court, or if the Settlement is terminated or fails to become effective as specified in this Settlement Agreement, including, but

not limited to, Sections 8.1 or 8.2 above, this Settlement Agreement shall be canceled and terminated as specified in Section 8.4 unless Defendants and the Class Representatives mutually agree in writing to proceed with this Settlement Agreement.

8.4.    If this Settlement Agreement fails to become effective, the Settling Parties shall be restored to their respective positions. In such event, (a) any Final Judgment and Order of Dismissal With Prejudice or other order entered by the Court in accordance with the terms of this Settlement Agreement shall be treated as vacated *nunc pro tunc*, and any certification of the Class shall be null, void, and without precedential effect of any kind; (b) this Settlement Agreement shall be null, void and without precedential effect of any kind, except for this subsection; (c) all of its provisions and all negotiations, statements, and proceedings relating to it shall be without prejudice to the rights of the Parties, all of whom shall be restored to their respective positions existing immediately before the execution of this Settlement Agreement; (d) the Parties expressly reserve all claims, remedies, defenses, arguments and motions as to all claims that have been or might later be asserted in this Action; (e) neither this Settlement Agreement nor the fact of its having been made nor negotiations leading to it, nor any discovery pursuant to this Agreement shall be admissible or entered into evidence for any purpose whatsoever; (f) any settlement- related orders entered in this Action shall be deemed vacated and shall be without any force or effect; (g) all outstanding discovery obligations that have been stayed as a result of settlement negotiations and settlement shall become due 30 days after a written demand is served by the propounding party after one of the events of Section 8.3; and (h) new scheduling orders shall be entered; and (h) all monies paid under this Settlement Agreement shall be returned.

## 9.    MISCELLANEOUS PROVISIONS

9.1.    The Settling Parties (a) acknowledge that it is their intent to consummate this Settlement; and (b) agree, subject to their fiduciary and other legal obligations, to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Settlement Agreement and to exercise their reasonable best efforts to accomplish the foregoing terms and conditions of this Settlement Agreement. Class Counsel and Defendant's Counsel agree to cooperate with one another in seeking Court approval of the Settlement, including reaching prompt agreement to and execution of all such other documentation as may be reasonably required to obtain final approval of the Settlement.

9.2.    The Settling Parties intend this Settlement Agreement to be a final and complete resolution of the Released Claims as described herein against the Released Parties. Accordingly, the Settling Parties agree not to assert in any forum that the Action was brought by the Class Representatives or defended by Defendants in bad faith or without a reasonable basis.

9.3.    The headings used herein are used for the purpose of convenience only and are not meant to have legal effect.

9.4.    Any failure of any Party to comply with any obligation, covenant, agreement, or condition herein may be expressly waived in writing, to the extent permitted under applicable law, by the Party or Parties entitled to the benefit or such obligation, covenant, agreement, or condition.

9.5.    The Exhibit to this Settlement Agreement is material and an integral part thereof and is fully incorporated herein by this reference.

9.6.    This Settlement Agreement and its Exhibit set forth the entire agreement and understanding of the Parties with respect to the matters set forth herein and supersede all prior negotiations, agreements, arrangements, and undertakings with respect to those matters. No

representations, warranties, or inducements have been made to any party concerning this Settlement Agreement or its Exhibit other than the representations, warranties, and covenants contained and memorialized in those documents. This Settlement Agreement may be amended or modified only by a written instrument signed by or on behalf of all Settling Parties or their respective successors-in-interest.

9.7.     Except as otherwise provided in this Settlement Agreement, each Party shall bear its own fees and costs.

9.8.     Class Representatives represent and warrant that they have not directly or indirectly assigned, transferred, or encumbered any claim or right or interest against the Released Parties to any other person or party and that he is fully entitled to release the same.

9.9.     Each counsel or other Person executing this Settlement Agreement or its Exhibit, or any related Settlement documents on behalf of any Party hereto hereby warrants and represents that such Person has the full authority to do so and has the authority to take appropriate action required or permitted to be taken pursuant to the Settlement Agreement to effectuate its terms.

9.10.     This Settlement Agreement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument provided that counsel for the Parties to this Settlement Agreement shall exchange original signed counterparts. A facsimile or PDF signature shall be deemed an original for all purposes.

9.11.     This Settlement Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Parties and the Released Parties.

9.12.     The Court shall retain continuing jurisdiction with respect to implementation, interpretation, and enforcement of the terms of this Settlement Agreement, including for

interpretation of provisions relating to Mootness Applications, and all parties hereto submit to the jurisdiction of the Court for purposes of implementing, interpreting, and enforcing the Settlement embodied in this Settlement Agreement.

9.13.  This Settlement Agreement and its Exhibit shall be considered to have been negotiated, executed, and delivered for performance in the State of Illinois. The rights and obligations of the Parties to this Settlement Agreement shall be governed by the laws of the State of Illinois without giving effect to that State's choice of law or conflict of laws principles.

9.14.  This Settlement Agreement is deemed to have been materially drafted and prepared by counsel for all parties, as a result of arms' length negotiations. Whereas all Parties have contributed substantially and materially to the preparation of this Settlement Agreement, it shall not be construed more strictly against one Party than another.

9.15.  The Parties acknowledge, agree, and specifically warrant to each other that they have read this Settlement Agreement, have received legal advice with respect to the advisability of entering into this Settlement, and fully understand its legal effect.

9.16.  Class Counsel represent that they do not represent any potential plaintiff who is not yet of record in the above-captioned matter, who is contemplating suing or bringing claims against the Released Parties for Released Claims. Class Counsel further represents that they (a) are not presently retained by any other individuals in Illinois with similar claims against Defendants; (b) are not aware of, and have not been informed of, any other plaintiff, class, class member, or attorney who intends to bring similar litigation in Illinois against Defendants; and (c) are not seeking to represent individuals in Illinois with similar claims against Defendants.

9.17.  The Parties and their counsel agree to keep the existence and contents of this Settlement Agreement confidential until the date on which the Motion for Approval is filed;

provided, however, that this section shall not prevent Defendants from disclosing such information, prior to the date on which the Motion for Approval is filed, to state and federal agencies, or its own independent accountants, actuaries, advisors, financial analysts, insurers or attorneys, nor shall it prevent the Parties and their counsel from disclosing such information to Persons or entities (such as experts, courts, co-counsel, and/or administrators) to whom the Parties agree disclosure must be made in order to effectuate the terms and conditions of this Settlement Agreement.

9.18.   Defendants' execution of this Settlement Agreement shall not be construed to release - and Defendants expressly do not intend to release - any claim Defendants may have or make against any insurer or other third party for any cost or expense incurred in connection with this Settlement, including, without limitation, for attorneys' fees and costs.

9.19.   The Parties reserve the right, subject to the Court's approval, to agree to any reasonable extensions of time that might be necessary to carry out any of the provisions of this Settlement Agreement.

9.20.   The Parties expressly acknowledge and agree that this Settlement Agreement and its Exhibit, along with all related drafts, motions, pleadings, conversations, negotiations, and correspondence, constitute an offer of compromise and a compromise within the meaning of the most protective of the following: Federal Rule of Evidence 408, any equivalent rule of evidence in any state court, or any agreement of the Parties. In no event shall this Settlement Agreement, any of its provisions or any negotiations, statements or court proceedings relating to its provisions in any way be construed as, offered as, received as, used as, or deemed to be evidence of any kind in the Actions, any other action, or in any judicial, administrative, regulatory or other proceeding, except in a proceeding to enforce this Settlement Agreement or the rights of the

Parties or their counsel. Without limiting the foregoing, neither this Settlement Agreement nor any related negotiations, statements, or court proceedings shall be construed as, offered as, received as, used as, or deemed to be evidence or an admission or concession of any liability or wrongdoing whatsoever on the part of any Person or entity, including, but not limited to, the Released Parties, Plaintiffs, or the Class or as a waiver by the Released Parties, Plaintiffs or the Class of any applicable privileges, claims or defenses.

9.21.   The waiver by one Party of any breach of this Settlement Agreement by another Party shall not be deemed a waiver of any prior or subsequent breach of this Settlement Agreement.

9.22.   If one Party to this Settlement Agreement considers another Party to be in breach of its obligations under this Settlement Agreement, that Party must provide the breaching Party with written notice of the alleged breach and provide a reasonable opportunity, and in no case less than ten (10) full business days, to cure the breach before taking any action to enforce any rights under this Settlement Agreement; provided, however, that any alleged breach of the injunctive-relief provisions herein shall be subject to the notice and cure period set forth in Section 2.7.

(The remainder of this page is intended to be blank. Signature page follows)

IN WITNESS WHEREOF, the Parties hereto, and their counsel, have caused this Settlement Agreement to be executed on the dates set forth below.

**Class Representatives**:

Dated: May ___, 2017                              _____

Stefanie Gentles

Dated: May ___, 2017

_____
Richard Messerly

Dated: May ___, 2017

_____
Gregg Brown

Dated: May ___, 2017

_____
David Bair

**Class Counsel:**

Dated:  May ___, 2017

_____
David Nelson, FIRM

Dated:  May ___, 2017

_____
Matthew H. Armstrong, Armstrong Law
Firm LLC

**Defendants**:


Dated:  May ___, 2017

_____
HealthPort Technologies, LLC
By: _____
Its:

_____


Dated:  May ___, 2017

_____
CIOX Health LLC
By: _____
Its:

_____

Parties or their counsel. Without limiting the foregoing, neither this Settlement Agreement nor any related negotiations, statements, or court proceedings shall be construed as, offered as, received as, used as, or deemed to be evidence or an admission or concession of any liability or wrongdoing whatsoever on the part of any Person or entity, including, but not limited to, the Released Parties, Plaintiffs, or the Class or as a waiver by the Released Parties, Plaintiffs or the Class of any applicable privileges, claims or defenses.

9.21.    The waiver by one Party of any breach of this Settlement Agreement by another Party shall not be deemed a waiver of any prior or subsequent breach of this Settlement Agreement.

9.22.    If one Party to this Settlement Agreement considers another Party to be in breach of its obligations under this Settlement Agreement, that Party must provide the breaching Party with written notice of the alleged breach and provide a reasonable opportunity, and in no case less than ten (10) full business days, to cure the breach before taking any action to enforce any rights under this Settlement Agreement; provided, however, that any alleged breach of the injunctive-relief provisions herein shall be subject to the notice and cure period set forth in Section 2.7.

(The remainder of this page is intended to be blank. Signature page follows)

IN WITNESS WHEREOF, the Parties hereto, and their counsel, have caused this Settlement Agreement to be executed on the dates set forth below.

**Class Representatives**:

Dated: ~~May~~ 27, 2017

Stefanie Gentles

Dated: May ___, 2017

_Richard Messerly_
Richard Messerly

Dated: May ___, 2017

_____
Gregg Brown

Dated: May ___, 2017

_____
David Bair

**Class Counsel:**

Dated: May ___, 2017

_____
David Nelson, FIRM

Dated: May ___, 2017

_____
Matthew H. Armstrong, Armstrong Law
Firm LLC

Stefanie Gentles

Dated: May ___, 2017
_____
Richard Messerly

Dated: ~~May~~ June 28, 2017
_____
Gregg Brown

Dated: May ___, 2017
_____
David Bair

**Class Counsel:**

Dated: May ___, 2017
_____
David Nelson, FIRM

Dated: May ___, 2017
_____
Matthew H. Armstrong, Armstrong Law
Firm LLC

Stefanie Gentles

Dated: May ___, 2017

_____

Richard Messerly

Dated: May ___, 2017

_____

Gregg Brown

Dated: May ___, 2017

_David Bair_____

David Bair

**Class Counsel:**

Dated: May ___, 2017

_____

David Nelson, FIRM

Dated: May ___, 2017

_____

Matthew H. Armstrong, Armstrong Law
Firm LLC

Stefanie Gentles

Dated: May ___, 2017

_____
Richard Messerly

Dated: May ___, 2017

_____
Gregg Brown

Dated: May ___, 2017

_____
David Bair

**Class Counsel:**

Dated: May ___, 2017

_____
David Nelson, Nelson & Nelson, Attorneys
at Law, P.C.

Dated: ~~May~~ June 27, 2017

_____
Matthew H. Armstrong, Armstrong Law
Firm LLC

**Defendants**:

Dated:  January _2 8_, 2017

_____

HealthPort Technologies, LLC
By: _____
Its: _____

Dated:  January _2 7_, 2017

_____

CIOX Health LLC
By: _____
Its: _____